UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LEONARD CARTER,

                      Petitioner,           Case No. 2:14-cv-12787
                                        Honorable Patrick J. Duggan

v.

DUNCAN MACLAREN,

                      Respondent.
_____/

## OPINION AND ORDER (1) DENYING PETITION FOR WRIT OF HABEAS CORPUS, (2) DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY, AND (3) DENYING PETITIONER'S MOTION FOR EVIDENTIARY HEARING

Petitioner Leonard Carter ("Petitioner"), a Michigan Department of Corrections prisoner currently confined at the Kinross Correctional Facility in Kincheloe, Michigan, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 on July 14, 2014, and amended the petition on July 28, 2014. In his pro se application, which is presently before the Court, Petitioner challenges his state-court convictions, secured after a jury trial in the Oakland County Circuit Court, on two counts of first-degree murder, in violation of Michigan Compiled Laws § 750.316 on the following grounds: (1) Petitioner was denied the effective assistance of counsel because his trial attorney failed to cross-examine a prosecution witness with a prior inconsistent statement; (2) the trial court erroneously permitted the jury to ask an expert witness

a question that impermissibly shifted the burden of proof from the prosecution to the defense; (3) trial counsel was ineffective for failing to object to a warrantless search; (4) the prosecutor committed misconduct during closing arguments; (5) defense counsel rendered constitutionally-inadequate assistance by failing to present a reasonable defense theory; and (6) appellate counsel was ineffective for failing to raise meritorious claims on direct appeal.

Having thoroughly reviewed the claims asserted in the habeas application, the accompanying briefs, and the Rule 5 materials,[1] the Court concludes that Petitioner is not entitled to the issuance of the writ. Specifically, the state court adjudication of Petitioner's first two claims did not violate, or involve an unreasonable application of, clearly established law as established by the Supreme Court of the United States. The four remaining claims are barred by the doctrine of procedural default, as Petitioner has failed to demonstrate cause to excuse the default, or that a fundamental miscarriage of justice would result from a failure to review these claims. The Court will therefore deny the petition and will further decline to issue a certificate of appealability. The Court will similarly deny Petitioner's motion for an evidentiary

---

[1] Rule 5 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, specifically subdivisions (c) and (d), set forth the respondent's obligation to submit state court materials related to the conviction and appeal challenged in a § 2254 proceeding.

hearing.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

The Court recites verbatim the facts relied upon by the Michigan Court of Appeals in assessing Petitioner's insufficiency of the evidence challenge on direct appeal, as these facts are entitled to a presumption of correctness on habeas review pursuant to 28 U.S.C. § 2254(e)(1).  *Wagner v. Smith*, 581 F.3d 410, 413 (6th Cir. 2009); *see also Treesh v. Bagley*, 612 F.3d 424, 431 n.1 (6th Cir. 2010) (noting that the presumption of correctness extends to factual findings made by state appellate courts) (citation omitted).

> Ray and defendant were brothers and Tony was their uncle; and, the three were all housemates. Pamela Carter, defendant's estranged wife, testified that flooding problems in the basement of the home where the men lived were causing stress. In fact, defendant indicated to Carter and Brenda Lee Boothe, his coworker and ex-girlfriend, that he was upset that Tony and Ray were not paying the bills or helping out around the house. Boothe also testified that she had a telephone conversation with defendant on January 15, 2007, two days before the murders, wherein he stated that he was "pissed off," and, referring to Tony and Ray, further stated (as he appears to concede on appeal), "I'm about to f*** them two up [sic]." Veda James, defendant's girlfriend at the time of the murders, similarly stated that defendant indicated that he did not like living with Ray and Tony because they were lazy, and that was especially true with respect to Tony.

> . . . [T]estimony showed that the victims had been wearing casual clothing or sleepwear when they were killed. That evidence suggested that the victims were either sleeping or relaxing at the time of the murder, and thus, caught off guard. Furthermore, there were no signs of forced entry into the home, or other disturbance, which could indicate

that the victims knew their killer.

Dr. Bernardino Pacris, the Deputy Medical Examiner, testified that the cause of both victims' deaths was multiple stab wounds and the manner of death homicide. In fact, one victim received 45 separate wounds, including 14 to the head and neck area. The wounds that inflicted the most damage included one on the left side of the chest that perforated the lung and two on the left side of the neck that nicked the jugular vein and carotid artery. The victim also had wounds on his hands that the doctor characterized as defensive injuries. The other victim's body received ten stab wounds, three on the right side of the head and neck and two in the right subclavian area, three stab wounds on the back and one stab wound in the abdomen. According to the doctor, the "most devastating injury" was the one in Ray's left chest, which cut the thoracic aorta. The high number of wounds and their placement in vital areas further indicate that the murderer had the intent to kill and time to deliberate, as he inflicted multiple wounds into two different victims.

Furthermore, not only did defendant live in the house with the victims, but DNA evidence tied defendant to the murder scene. Vitta, the DNA analyst, agreed that, of all the blood that she analyzed from the house, she did not find anyone else's DNA type other than defendant and the two victims. More specifically, DNA from the band-aid, the bathroom sink, and the kitchen floor matched defendant, while the victims were excluded. The blood on the knife handle that was recovered from the garbage can contained DNA from defendant (the major donor) and, although she could determine that there were other contributors, there was not enough material to determine a match. The blood on the knife blade matched two people, one being Ray, but the other contributor, again, could not be determined. However, "all of the DNA types that were detected were consistent" with defendant, Tony and Ray. The cutting of blood from the left leg of the gray dress pants, which belonged to defendant, had DNA from Ray.

Finally, regarding defendant's actions after the murders, testimony indicated that, after staying in Detroit for a few days where he spent money on crack and a prostitute, defendant ended up in Syracuse on February 1, 2007, where he remained until he was apprehended by

-4-

Syracuse police on June 4, 2007. During this time, defendant did not show up for his job, failed to contact Carter, Boothe, James, or Jacqueline Mosely (his mother), and missed Tony's and Ray's funerals, despite indicating to Detective Randy Collins, of the Syracuse Police Department, that he knew that Tony and Ray had been killed.

*       *       *

Testimony indicated that Ray owned a white Ford Crown Victoria, which defendant sold to Jones for $500 on January 18, 2007. In addition, Tony's last known banking transaction was on January 17, 2007, when he cashed a check for $600. Tony also won a bingo jackpot of $500 on the evening of January 17, 2007. When police discovered Tony's body, the pockets of his sweatpants had been turned inside out. According to Jones, he sold defendant crack cocaine, and defendant paid for it with bloody $100 bills. Jones was not entirely sure of the total amount of their multiple drug transactions, but he estimated that it was around $1,000.

*People v. Carter*, No. 290493, 2010 WL 1979442, at *4-6 (Mich. Ct. App. May 18, 2010) (unpublished) (per curiam).

After hearing this evidence at trial, a jury found Petitioner guilty of four counts of murder - two counts of first-degree murder and two counts of felony murder. Petitioner was later sentenced to mandatory life imprisonment without the possibility of parole on each of the four murder charges. Petitioner subsequently filed a claim of appeal in the Michigan Court of Appeals, raising the following claims in a brief filed by counsel and a supplemental pro se brief:

I. Trial counsel rendered ineffective assistance of counsel when he acquiesced to the admission of highly prejudicial photographs that deprived Petitioner of his right to fair trial.
II. Trial counsel deprived Petitioner of his constitutional right to the

effective assistance of counsel by failing to impeach a key witness with his prior inconsistent statements.

III. The trial court violated Petitioner due process right to a fair trial by an impartial jury when it allowed the jury to ask a question that shifted the burden of proof to the defense.

IV. Since there are only two victims, two of Petitioner four convictions and sentences violate double jeopardy and must be vacated.

V. There is insufficient evidence to sustain Petitioner convictions for premeditated murder.

VI. There is insufficient evidence to sustain Petitioner convictions for felony murder.

VII. The police violated Petitioner Fourth Amendment rights by searching the scene without a warrant.

In an unpublished, per curiam opinion, the Michigan Court of Appeals rejected most of Petitioner's arguments, concluding that there was sufficient evidence to sustain the murder convictions. The appellate court did, however, agree with Petitioner that double jeopardy principles precluded his being convicted of four murder charges involving two victims. Thus, the court remanded the case to amend the judgment to read that he is guilty of two counts first-degree murder, each supported by two theories: premeditated murder and felony murder. *Carter*, No. 290493, 2010 WL 1979442, at *1, 7.

Petitioner filed an application for leave to appeal in the Michigan Supreme Court. The application raised the first three claims that he raised in the Michigan

-6-

Court of Appeals through counsel, and added a claim that Petitioner's Fourth Amendment rights were violated as well as a claim that counsel was ineffective for failing to make a particular Fourth Amendment argument at a pre-trial suppression hearing. The Michigan Supreme Court denied the application because it was not persuaded that the questions presented warranted review. *People v. Carter*, 488 Mich. 913, 789 N.W.2d 467 (2010). Petitioner then filed a petition for writ of certiorari in the Supreme Court, which was denied. *Carter v. Michigan*, 131 S. Ct. 1793 (2011).

On August 17, 2011, having exhausted his direct review appellate rights, Petitioner filed a motion for relief from judgment in the state trial court, raising the following claims:

I. Trial counsel was ineffective for:

(1) failing to investigate and effectively cross-examine the drug-dealer/prostitute/hotel manager witnesses;

(2) failing to investigate a possible murder eyewitness or perpetrator;

(3) failing to present a reasonable defense theory;

(4) failing to object to a juror's burden-shifting question;

(5) failing to object to admission of evidence obtained via a warrantless entry into the backyard and a warrantless initial home entry;

(6) failing to request a curative instruction for the prosecutor's prejudicial remarks; and

-7-

(7) failing to object to the erroneous jury instructions.

II. The trial court erred in admitting evidence obtained during the warrantless search of Petitioner's house.

III. The prosecutor committed misconduct that denied defendant a fair trial by:

(1) vouching for the credibility of the drug-dealer/prostitute witnesses and falsely stating that these witnesses had nothing to gain by lying;

(2) falsely stating that the drug dealer's story had never changed; and

(3) shifting the burden of proof.

IV. The trial court's instructions on intent, premeditation, and deliberation violated the Fifth Amendment.

V. Appellate counsel was ineffective for failing to raise the issues set forth above.

On October 17, 2011, the trial court denied Petitioner's motion for relief from judgment pursuant to Michigan Court Rule 6.508(D)(3), finding that review of Petitioner's new claims was barred by his failure to show "good cause" for failing to raise them on direct appeal or "actual prejudice." The trial court also noted that some of the issues had already been rejected during Petitioner's direct appeal and that others lacked merit.

Petitioner then filed an application for leave to appeal in the Michigan Court of Appeals, narrowing his claims as follows:

-8-

I. (A) Trial counsel was ineffective for failing to object to the admission of evidence obtained via warrantless entry into to Petitioner's backyard. (B ) The trial court erred in ruling that this issue had been raised and rejected by the Michigan Court of Appeals.

II. The prosecutor committed misconduct that denied Petitioner a fair trial by falsely stating to the jury that the prosecution's witnesses' stories had never changed.

III. Counsel was ineffective for failing to present a reasonable defense theory.

IV. Appellate counsel was ineffective for failing to raise the claims set forth above.

The Michigan Court of Appeals denied the application for leave to appeal for failure to establish entitlement to relief under Michigan Court Rule 6.508(D). *People v. Carter*, No. 312453 (Mich. Ct. App. July 19, 2013).

Petitioner then applied for leave to appeal this decision in the Michigan Supreme Court, raising the same claims that he raised in the Michigan Court of Appeals. The court denied the application under Rule 6.508(D). *People v. Carter*, 495 Mich. 946, 843 N.W.2d 503 (2014).

On July 14, 2014, Petitioner filed the instant petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. (ECF No. 1.) On July 25, 2014, United States Magistrate Judge R. Steven Whalen issued an Order requiring Respondent Duncan MacLaren ("Respondent") to file a response to the petition. (ECF No. 3.) A few days later, on July 28, 2014, Petitioner filed a motion to strike and amend the third claim

in his habeas petition, which this Court granted in an Order dated November 3, 2014.
(ECF Nos. 5, 6.)

Petitioner's habeas application raises the following six claims: (1) Petitioner
was denied the effective assistance of counsel because his trial attorney failed to cross-
examine a prosecution witness with a prior inconsistent statement; (2) the trial court
permitted the jury to ask an expert witness a question that impermissibly shifted the
burden of proof from the prosecution to the defense; (3) trial counsel rendered
ineffective assistance by failing to object to a warrantless search; (4) the prosecutor
committed misconduct during closing arguments; (5) defense counsel rendered
constitutionally-inadequate assistance by failing to present a reasonable defense
theory; and (6) appellate counsel was ineffective for failing to raise meritorious claims
on direct appeal.  Respondent filed a response the petition along with the pertinent
Rule 5 materials on January 22, 2015, and, on March 9, 2015, Petitioner filed a reply.
(ECF Nos. 7-9.)  On March 26, 2015, Petitioner filed a motion asking this Court to
hold an evidentiary hearing to establish a factual basis for his federal constitutional
claims.  (ECF No. 10.)

## II.   STANDARD OF REVIEW

Review of this case is governed by the Antiterrorism and Effective Death
Penalty Act of 1996 ("AEDPA").  Pub. L. No. 104-132, 110 Stat. 1214.  In order to

grant relief, this Court must conclude that the state court's decision "with respect to any claim that was adjudicated on the merits in State court proceedings" was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States[]" or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).

The Supreme Court has expounded upon the meanings of the two clauses contained in 28 U.S.C. § 2254(d)(1). *Williams v. Taylor*, 529 U.S. 362, 405, 120 S. Ct. 1495, 1519 (2000) (O'Connor, J., opinion of the Court for Part II) ("[T]he 'contrary to' and 'unreasonable application' clauses [have] independent meaning."). "A state-court decision is contrary to clearly established federal law if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases or if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent." *Murphy v. Ohio*, 551 F.3d 485, 493-94 (6th Cir. 2009) (alterations in original) (internal quotation marks omitted) (quoting *Williams*, 529 U.S. at 405, 120 S. Ct. at 1519).

Alternatively, "[i]f the state court identifies the correct governing legal principle . . . , habeas relief is available under the unreasonable application clause if the state

court unreasonably applies that principle to the facts of the prisoner's case or unreasonably extends or unreasonably refuses to extend a legal principle from the Supreme Court precedent to a new context." *Akins v. Easterling*, 648 F.3d 380, 385 (6th Cir. 2011) (internal quotation marks and alterations omitted). A federal court may not find a state court's application of Supreme Court precedent unreasonable if it is merely "incorrect or erroneous. [Rather, t]he state court's application must have been 'objectively unreasonable.'" *See, e.g.*, *Wiggins v. Smith*, 539 U.S. 510, 520-21, 123 S. Ct. 2527, 2535 (2003) (citations omitted).

"[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams*, 529 U.S. at 411, 120 S. Ct. at 1522. "Rather, it is the habeas applicant's burden to show that the state court applied [Supreme Court precedent] to the facts of his case in an objectively unreasonable manner." *Woodford v. Visciotti*, 537 U.S. 19, 25, 123 S. Ct. 357, 360 (2002).

Factual determinations made by state court judges in the adjudication of claims cognizable on habeas review are accorded a presumption of correctness. 28 U.S.C. § 2254(e)(1). A habeas petitioner may rebut this presumption only with clear and convincing evidence. *Id.* Moreover, habeas review of claims adjudicated on the

merits is "limited to the record that was before the state court." *Cullen v. Pinholster*,
563 U.S. 170, 131 S. Ct. 1388, 1398 (2011).

As the authority cited above makes clear, AEDPA "imposes a 'highly deferential
standard for evaluating state-court rulings,' and 'demands that state-court decisions
be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. 766, 773, 130 S. Ct.
1855, 1862 (2010) (citing cases); *see also Nields v. Bradshaw*, 482 F.3d 442, 449 (6th
Cir. 2007).

## III.   ANALYSIS

### A.   Ineffective Assistance of Counsel

In his first claim for relief, Petitioner asserts that his trial counssel was
ineffective for failing to impeach Robert Jones, a drug dealer and key prosecution
witness, with a prior inconsistent statement during cross-examination.  According to
Petitioner, Jones testified that he saw Petitioner in possession of blood-soaked money
after the murders took place.  This testimony, however, was inconsistent with a
statement Jones made to law enforcement officials during the course of their
investigation.  In his initial statement to police officers, Jones indicated that somebody
else received the bloody money from Petitioner.  Petitioner contends that his trial
counsel should have impeached Jones with these inconsistent statements in order to
undermine Jones's credibility with the jury, and that counsel's failure to do so

-13-

constituted ineffective assistance of counsel.

The Michigan Court of Appeals rejected this claim, reasoning as follows:

> "The questioning of witnesses is presumed to be a matter of trial strategy," *People v Petri*, 279 Mich App 407, 413; 760 NW2d 882 (2008), which this Court "will not second-guess with the benefit of hindsight." *People v. Dixon*, 263 Mich App 393, 398; 668 NW2d 308 (2004). Whether to impeach Jones on this issue was a tactical decision that we will not second-guess on appeal. And, even if the failure to impeach was error, as argued by the prosecutor, had defense counsel impeached Jones, it would not have been a stretch for the jury to believe that Jones, in an effort to avoid admitted that he obtained the money when he sold crack to defendant, initially told police that someone else first obtained the blood-stained money from defendant. Further, the fact still remains that LaDonna Johnson, the woman who accompanied defendant to the LaRenaissance Motel in Detroit, Anelo Josevski, the motel manager, and Kleva Mix, Jones's girlfriend, all testified that they saw defendant with the bloodstained money. Therefore, defendant cannot show that Jones's testimony was prejudicial, and thus cannot show that he received ineffective assistance of counsel.

*Carter*, No. 290493, 2010 WL 1979442, at * 2. The Court is unable to conclude that this decision is either contrary to federal law (because the Michigan Court of Appeals applied the correct ineffective-assistance standard) or involved an objectively unreasonable application of the law governing ineffective assistance of counsel claims.

## 1.   *Governing Law*

The Sixth Amendment to the United States Constitution guarantees criminal defendants "the right to the effective assistance of counsel[,]" *Strickland v.*

-14-

*Washington*, 466 U.S. 668, 686, 104 S. Ct. 2052, 2063 (1984) (citation and internal

quotation marks omitted), not the flawless assistance of counsel, *Smith v. Mitchell*,

348 F.3d 177, 206 (6th Cir. 2003) ("After all, the constitutional right at issue here is

ultimately the right to a fair trial, not to perfect representation.").  To show that he was

denied the effective assistance of counsel under federal constitutional standards,

Petitioner must satisfy *Strickland*'s two-prong test:

> First, the defendant must show that counsel's performance was
> deficient.  This requires showing that counsel made errors so serious
> that counsel was not functioning as the "counsel" guaranteed the
> defendant by the Sixth Amendment.  Second, the defendant must show
> that the deficient performance prejudiced the defense.  This requires
> showing that counsel's errors were so serious as to deprive the
> defendant of a fair trial, a trial whose result is reliable.

*Id*. at 687, 104 S. Ct at 2064.

When confronted with a case containing the procedural posture presented here

– a federal district court reviewing an ineffective assistance of counsel claim

adjudicated on the merits and denied by a state court by way of federal habeas review

– courts must not conflate the "highly deferential" standards independently created by

*Strickland* and § 2254(d).  *Harrington v. Richter*, 562 U.S. 86, 105, 131 S. Ct. 770,

788 (2011); *id.* at 101, 131 S. Ct. at 785 ("The pivotal question is whether the state

court's application of the *Strickland* standard was unreasonable.  This is different from

asking whether defense counsel's performance fell below *Strickland*'s standard.").

Instead, "when the two [standards] apply in tandem," a federal district court must apply a "doubly" deferential standard. *Id.* at 105, 131 S. Ct. at 788 (citation omitted). Thus, the Court's task today is not to consider *ab initio* whether Petitioner's counsel satisfied the requirements of *Strickland*; rather, the Court must decide whether the state court's *Strickland* determination was "contrary to, or involved an unreasonable application of, clearly established Federal law[.]"  28 U.S.C. § 2254(d)(1).

## 2.   *Application*

Petitioner insists that his trial counsel performed deficiently by failing to impeach Jones with his prior inconsistent statement regarding who saw Petitioner with the blood-stained currency.  Because ineffective assistance is equated with "representation f[alling] below an objective standard of reasonableness[,]" "[i]n any ineffectiveness case, a particular decision to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Strickland*, 466 U.S. at 688, 691, 104 S. Ct. at 2064, 2066.  In analyzing a petitioner's claim of ineffective assistance, courts employ a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  *Id.* at 689, 104 S. Ct. at 2065.  This presumption is particularly potent when evaluating counsel's strategic or tactical decisions regarding case presentation.

-16-

Of particular relevance to the issue asserted by Petitioner, "[d]efense counsel's decisions regarding cross-examination are matters of trial strategy, which are entitled to 'great respect' by this Court." *Anderson v. Berghuis*, No. 1:10-cv-349, 2015 U.S. Dist. LEXIS 16432, at *37-38 (W.D. Mich. Feb. 11, 2015) (Bell, J.) (quoting *Glenn v. Sowders*, 811 F.3d 605 (table), 1986 WL 18475, at *4 (6th Cir. 1986)); *see also Henderson v. Norris*, 118 F.3d 1283, 1287 (8th Cir. 1997) ("Courts generally entrust cross-examination techniques, like other matters of trial strategy, to the professional discretion of counsel."); *Dell v. Straub*, 194 F. Supp. 2d 629, 651 (E.D. Mich. 2002); *Johnson v. Hofbauer*, 159 F. Supp. 2d 582, 607-08 (E.D. Mich. 2001) ("Impeachment strategy is a matter of trial tactics, and tactical decisions are not ineffective assistance of counsel simply because in retrospect better tactics may have been available.").  This is precisely the basis on which the Michigan Court of Appeals rejected Petitioner's claim on direct review.  Because the state appellate court applied the correct standard and did so in a manner consistent with federal legal principles, Petitioner's claim of error cannot be sustained.

Even if counsel had impeached Jones on whether he received the blood-soaked money directly from Petitioner or through an intermediary, Jones, a drug dealer, might have initially told law enforcement officials that he did not interact directly with Petitioner in an effort to distance himself from the killings.  That is, it would have

-17-

been a simple matter for Jones to explain the inconsistent statement on redirect.  A reasonable defense attorney might decide to forgo any minor impeachment value the prior statement would have provided, particularly in light of the fact that several other witnesses testified that they saw Petitioner in possession of the bloody money. (1/13/09 Trial Tr. 18 (testimony of LaDonna Johnson); *id.* at 161-62 (testimony of Anelo Josevski); *id.* at 146 (testimony of Kleva Mix).)  Put differently, Jones's testimony on this subject was cumulative to that of several other witnesses, and his prior inconsistent statement, therefore, was of little impeachment value.  Further, because several other witnesses testified that they saw Petitioner in possession of the bloodied currency, counsel's failure to impeach Jones cannot be said to have resulted in any prejudice to Petitioner.

The Court concludes that the opinion of the state appellate court on Petitioner's first claim was neither contrary to, nor involved an unreasonable application of, clearly-established Supreme Court precedent.  Accordingly, habeas relief is not warranted on this claim.

## B.    Jurors' Question

In his second claim, Petitioner contends that the trial court violated his due process right to a fair trial when it allowed the jury to ask a question of an expert

witness that had the effect of improperly shifting the burden of proof.[2]   Petitioner

raised this claim on direct appeal but the Michigan Court of Appeals rejected it,

explaining as follows:

> Defendant next argues that the trial court violated his right to a fair trial
> by impermissibly shifting the burden of proof.  This issue ar[ose] when,
> following the attorney's questioning of Heather Vitta, a forensic scientist
> at the Michigan State Police Crime Lab in Northville, the jury indicated
> that it had an additional question.   The judge had both attorneys
> approach the bench, and then stated, "I have a question which counsel
> and the court agree is appropriate, and I will ask the question."[3]  Thus,
> this issue has been waived on appeal.  See *People v Carter*, 462 Mich
> 206, 215; 612 NW2d 114 (2000) ("Waiver has been defined as the
> intentional relinquishment or abandonment of a known right. . . .  One

---

[2] At the time of Petitioner's trial in 2009, Michigan Court Rule 6.414(E)
expressly permitted state-court trial judges to exercise their discretion on the
subject of whether to allow jurors to ask questions.  The rule provided that if a
court permitted such inquiries, that "it must employ a procedure that ensures that
inappropriate questions are not asked, and that the parties have the opportunity to
object to the questions."  MCR 6.414(E) (2009).  Although this rule was repealed
in 2011, the trial judge in this case appears to have followed the guidance set forth
in the rule, as Respondent explains that jurors were permitted to submit written
questions after attorneys had concluded their questioning of a witness, and that the
attorneys would then approach the bench to discuss the proposed question with the
judge to determine whether it was appropriate.  (Resp't's Br. 53.)

[3] The Michigan Court of Appeals noted:

The question was, "can the defense request samples to be examined?"
Vitta answered, "Yes.  The defense could request that samples be
examined through the prosecution."  The prosecution then asked, "was
that done in this case?" and defense counsel answered, "no."

*Carter*, No. 290493, 2010 WL 1979442, at *3 n.1.

who waives his rights under a rule may not then seek appellate review of a claimed deprivation of those rights, for his waiver has extinguished any error.").

*Carter*, No. 290493, 2010 WL 1979442, at *3.  As with the previous claim, this Court is unable to conclude that the state court applied a rule contrary to clearly-established Supreme Court precedent or that it unreasonably applied governing precedent in rejecting Petitioner's claim of error.

The Michigan Court of Appeals's decision rested on the legal principle of waiver; that is, that Petitioner's counsel's acquiescence to the juror's question was an intentional relinquishment of a right that Petitioner may not raise again later.  "One who waives his rights under a rule may not then seek appellate review of a claimed deprivation of those rights, for his waiver has extinguished any error."  *United States v. Griffin*, 84 F.3d 912, 924 (7th Cir. 1996) (citing *United States v. Olano*, 507 U.S. 725, 113 S. Ct. 1770 (1993)).  Extinguishment of error through waiver was clearly-established federal law at the time of Petitioner's trial and appeal.

Further, although federal courts discourage questions by jurors in federal criminal trials, *see, e.g.*, *United States v. Collins*, 226 F.3d 457, 461-62 (6th Cir. 2000), there is no caselaw of which this Court is aware that holds that questions by jurors implicate a specific constitutional guarantee.  *Wheeler v. Jones*, 59 F. App'x 23, 30 (6th Cir. 2003) (unpublished) (rejecting habeas petitioner's claim of error on this

-20-

basis).  Because this action is governed by AEDPA, the lack of clearly-established Supreme Court precedent holding that such un-objected to questioning was impermissible forecloses Petitioner's claim for relief.  *Carey v. Musladin*, 549 U.S. 70, 127 S. Ct. 649 (2006).

The best Petitioner can do is to suggest that his right to be proven guilty beyond a reasonable doubt was somehow implicated by the question because it suggested that the defense was required to defend the state's testing by asking for some testing of its own. This novel theory cannot be supported by existing law, and this Court may not manufacture a new due-process right for the first time on habeas corpus review. *Parker v. Matthews*, 132 S. Ct. 2148, 2155 (2012); *Premo v. Moore*, 562 U.S. 115, 127, 131 S. Ct. 733, 743 (2011).  In the absence of a controlling holding of the Supreme Court, this Court may not grant relief on Petitioner's due-process claim. *Premo*, 562 U.S. at 127, 131 S. Ct. at 743 (novelty alone is a reason to reject a habeas claim).[4]

## C.    Procedural Default

Respondent contends that review of Petitioner's four remaining claims is barred

_____

[4] The Court notes that to the extent that Petitioner is attempting to argue that his trial counsel was ineffective for waiving any objection to the jury's question, this claim has not been fairly-presented through one full round in the state courts and has been procedurally defaulted because Petitioner has no avenues to return to the state courts to properly exhaust the claim.

by the doctrine of procedural default.[5]  Pursuant to this doctrine, "a federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule." *Martinez v. Ryan*, __ U.S. __, 132 S. Ct. 1309, 1316 (2012).  The four remaining claims set forth in Petitioner's habeas application were not presented to the state courts during his direct appeal.  Rather, he presented them in his motion for relief from judgment and the appeal that followed its denial. These claims are procedurally-barred because Petitioner did not demonstrate adequate cause or prejudice under Michigan Court Rule 6.508(D)(3) for failing to raise the claims on direct review.

## 1.    *Governing Legal Principles*

Procedural default relates to the exhaustion requirement, which provides that "[a] federal court will not address a habeas petitioner's federal constitutional claim unless the petitioner has first fairly presented the claim to the state courts."  *Deitz v. Money*, 391 F.3d 804, 808 (6th Cir. 2004).  In other words, state prisoners are required to exhaust their claims in the state courts before filing a petition for a writ of habeas corpus under 28 U.S.C. §2254.  *O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 119 S. Ct.

---

[5] These four claims are: (1) trial counsel rendered ineffective assistance by failing to object to a warrantless search; (2) the prosecutor committed misconduct during closing arguments; (3) defense counsel rendered constitutionally-inadequate assistance by failing to present a reasonable defense theory; and (4) appellate counsel was ineffective for failing to raise meritorious claims on direct appeal.

1728, 1732 (1999) ("[S]tate prisoners must give the state courts one full fair opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process[.]"); *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994). In order to properly exhaust a claim in the State of Michigan, a habeas petitioner must present the claim to the Michigan Court of Appeals and the Michigan Supreme Court. *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990). When a habeas petitioner fails to present his claims to the state courts, the ordinary procedure is for the petition to be held in abeyance so that the petitioner may return to the state courts and exhaust his or her appellate remedies. *Rose v. Lundy*, 455 U.S. 509, 515-16, 102 S. Ct. 1198, 1201-02 (1982). However, this procedure requires that an opportunity to litigate the claim in the state courts remains available. Such an opportunity does not exist in the present case.

When a habeas petitioner fails to present his or her claims to the state courts and a state procedural rule precludes the petitioner from pursuing any further judicial review, the petitioner's claims are said to have been procedurally defaulted. In such cases, the petitioner has procedurally defaulted those claims for purposes of federal habeas review because he or she has not, and indeed cannot, satisfy the exhaustion requirement. *Pudelski v. Wilson*, 576 F.3d 595, 605 (6th Cir. 2009) (citing *Martin v. Mitchell*, 280 F.3d 594, 603 (6th Cir. 2002)). Put differently, "[a] federal court is []

barred from hearing issues that could have been raised in the state courts, but were not, and now may not be presented to the state courts due to a procedural defect or waiver." *Deitz*, 391 F.3d at 808.

Federal courts apply a three-part test to determine if a state prisoner has procedurally defaulted his federal claims in state court. *Willis v. Smith*, 351 F.3d 741, 744 (6th Cir. 2003). First, there must be a firmly established, state procedural rule which is applicable to the petitioner's claim and the petitioner must not have complied with the rule. *Ford v. Georgia*, 498 U.S. 411, 423-24, 111 S. Ct. 850, 857-58 (1991). Second, it must fairly appear that the last state court to which the petitioner sought review relied on the procedural rule as a basis for its decision to refuse to review his or her federal claims. *Coleman v. Thompson*, 501 U.S. 722, 740, 111 S. Ct. 2546, 2560 (1991). Third, the procedural default must be an "adequate and independent" state ground on which the state can rely to foreclose review of a federal claim. *Cnty. Court of Ulster Cnty. v. Allen*, 442 U.S. 140, 148, 99 S. Ct. 2213, 2220 (1979). If those three prerequisites are met, then the petitioner has procedurally defaulted his or her federal claims in state court, which precludes federal habeas review unless the petitioner shows "that there was cause for the default and prejudice resulting from the default, or that a miscarriage of justice will result from enforcing the procedural default in the petitioner's case." *Seymour v. Walker*, 224 F.3d 542, 550 (6th Cir.

2000) (citing *Wainwright v. Sykes*, 433 U.S. 72, 87, 90-91, 97 S. Ct. 2497 (1977));

*Deitz*, 391 F.3d at 808 ("In order to gain access to a habeas review of a [claim not

adjudicated on the merits due to a state procedural rule], a petitioner must demonstrate

either (1) cause to excuse the waiver and prejudice to his defense or (2) actual

innocence.") (citing *Murray v. Carrier*, 477 U.S. 478, 485-92, 106 S. Ct. 2639, 2643-

47 (1986)). One circumstance constituting cause to excuse such a default is when the

procedural default was the result of ineffective assistance of counsel. *Murray*, 477

U.S. at 488, 106 S. Ct. at 2645.

### 2.   *Application*

Applying the procedural-default test articulated above, the Court must first

determine whether there is an established state procedural rule applicable to

Petitioner's claims that he failed to comply with. The Court determines that there is.

Michigan Court Rule 6.508(D)(3) provides that a court may not grant relief to a

defendant if the motion for relief from judgment alleges grounds for relief which

could have been raised on direct appeal, absent a showing of good cause for the failure

to raise such grounds previously and actual prejudice resulting therefrom.

Analysis of the second factor - that being that the last state court from which

Petitioner sought review relied on the procedural rule as a basis for its decision to

review his claims - fares no better despite being slightly more involved by virtue of

-25-

the rule that "a procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on the procedural bar." *Harris v. Reed*, 489 U.S. 255, 263, 109 S. Ct. 1038, 1043 (1989).  If the last state court judgment contains no reasoning, but simply affirms the conviction in a standard order, the federal habeas court must look to the last reasoned state-court judgment rejecting the federal claim and apply a presumption that later unexplained orders upholding the judgment or rejecting the same claim rested upon the same ground.   *Ylst v. Nunnemaker*, 501 U.S. 797, 803, 111 S. Ct. 2590, 2594 (1991).  Here, the Michigan Court of Appeals and the Michigan Supreme Court rejected Petitioner's post-conviction appeal on the ground that "the defendant has failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)."  These orders did not refer to subsection (D)(3) nor mention Petitioner's failure to raise these claims on direct review as a rationale for rejecting his post-conviction claims.  Because the form orders in this case citing Rule 6.508(D) are ambiguous as to whether they refer to procedural default or a denial of post-conviction relief on the merits, the orders are unexplained.  *Guilmette v. Howes*, 624 F. 3d 286, 291 (6th Cir. 2010).  This Court must "therefore look to the last reasoned state court opinion to determine the basis for the state court's rejection" of petitioner's claims.  *Id.*

The trial court, in rejecting petitioner's post-conviction claims, indicated that Petitioner failed to satisfy the "good cause" or "actual prejudice" requirement of Michigan Court Rule 6.508(D)(3) for failing to raise his claims during his appeal of right.  (ECF No. 8-28 at 6-13.)  The trial court's reliance on this rule satisfies the second element of the procedural-default test.  Further, reliance on Rule 6.508(D)(3) was "an adequate and independent state ground" on which the state could rely to foreclose review, thereby satisfying the third element.[6] *Amos v. Renico*, 683 F.3d 720, 733 (6th Cir. 2012).  Petitioner's remaining four claims, claims that he asserted in the first instance during his post-conviction review proceedings, are therefore procedurally defaulted, unless Petitioner demonstrates cause and prejudice.

Petitioner alleges ineffective assistance of appellate counsel as cause to excuse his failure to raise these claims on direct review.  The Sixth Amendment guarantees a defendant the right to the effective assistance of counsel on the first appeal by right. *Evitts v. Lucey*, 469 U.S. 387, 396-97, 105 S. Ct. 830, 836-37 (1985).  However, it is

---

[6] The fact that the trial judge also appears to have discussed the merits of Petitioner's claims in addition to invoking the provisions of Rule 6.508(D)(3) when it was conducting the "actual prejudice" inquiry does not alter this analysis. *Alvarez v. Straub*, 64 F. Supp. 2d 686, 695 (E.D. Mich. 1999).  A federal court need not reach the merits of a habeas petition where the last state court opinion clearly and expressly rested upon procedural default as an alternative ground, even though it also expressed views on the merits. *McBee v. Abramajtys*, 929 F.2d 264, 267 (6th Cir. 1991).

well-established that a criminal defendant does not have a constitutional right to have

appellate counsel raise every non-frivolous issue on appeal. *Jones v. Barnes*, 463 U.S.

745, 751-52, 103 S. Ct. 3308, 3312-13 (1983). The Supreme Court has explained:

> For judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every "colorable" claim suggested by a client would disserve the . . . goal of vigorous and effective advocacy. . . . Nothing in the Constitution or our interpretation of that document requires such a standard.

*Id*. at 754, 103 S. Ct. at 3314.

Strategic and tactical choices regarding which issues to pursue on appeal are

"properly left to the sound professional judgment of counsel." *United States v. Perry*,

908 F.2d 56, 59 (6th Cir. 1990). "Generally, only when ignored issues are clearly

stronger than those presented will the presumption of effective assistance of appellate

counsel be overcome." *Monzo v. Edwards*, 281 F.3d 568, 579 (6th Cir. 2002). In

other words, appellate counsel may deliver deficient performance and prejudice a

defendant by omitting a "dead-bang winner," which is defined as an issue which was

obvious from the trial record and would have resulted in a reversal on appeal. *Meade

v. Lavigne*, 265 F. Supp. 2d 849, 870 (E.D. Mich. 2003). If a petitioner demonstrates

that appellate counsel rendered constitutionally-ineffective assistance, he or she must

then demonstrate actual prejudice.

Petitioner fails to discharge his burden of demonstrating that appellate counsel's

performance fell outside the wide range of professionally-competent assistance by omitting the claims that he raised in his post-conviction motion.  Appellate counsel raised several issues on appeal, and Petitioner supplemented the issues by filing a pro se Standard 4 brief.  Petitioner has not demonstrated that the claims he failed to raise during direct review are clearly stronger than those raised by appellate counsel. Further, as Respondent argues, Petitioner's later-asserted claims would have fared no better than the ones raised on direct appeal.  Thus, Petitioner has failed to demonstrate actual prejudice.  This being the case, Petitioner has not discharged his burden of persuading this Court that it should review his procedurally-defaulted claims.

Moreover, Petitioner has not presented any new reliable evidence to support an assertion of innocence that would allow this Court to consider the procedurally-defaulted claims. Because Petitioner has not presented any new reliable evidence that he is innocent of these crimes, a miscarriage of justice will not occur if the Court declines to review Petitioner's defaulted claims on the merits.

## IV.    MOTION FOR EVIDENTIARY HEARING

Petitioner has also filed a motion for evidentiary hearing.  He seeks to expand the record to support his ineffective-assistance-of-counsel claims, arguing that he did not have an opportunity to develop the factual basis for these claims in state court.

In *Cullen v. Pinholster*, 563 U.S. 170, 131 S. Ct. 1388 (2011), the Supreme

-29-

Court held that where habeas claims have been decided on the merits in state court, a federal court's review under 28 U.S.C. § 2254(d)(1)—whether the state court determination was contrary to or a involved an unreasonable application of established federal law—must be confined to the record that was before the state court. *Id.* at 1398. Although Petitioner asserts that the Court may hold an evidentiary hearing because the state courts did not adjudicate his ineffective assistance claims on the merits, the Court is not at all persuaded that an evidentiary hearing is proper or necessary because, as with the state court during post-conviction review, the Court does not believe that Petitioner's claims have any merit.

Having determined that Petitioner's claims do not survive review under AEDPA, Petitioner's request for an evidentiary hearing is denied.

## V.   CERTIFICATE OF APPEALABILITY

Petitioner may not appeal the Court's denial of his habeas petition unless a district or circuit judge issues a certificate of appealability.   28 U.S.C. § 2253(c)(1)(A); Fed. R. App. P. 22(b).  A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve

encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327, 123 S. Ct. 1029, 1034 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S. Ct. 1595, 1604 (2000)).  When a district court denies a habeas claim on procedural grounds without addressing the merits, a certificate of appealability should issue if it is shown that jurists of reason would find it debatable whether the petitioner states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the court was correct in its procedural ruling.  *Slack*, 529 U.S. at 484, 120 S. Ct. at 1604.

Having considered the matter, the Court concludes that reasonable jurists would not debate the propriety of this Court's resolution of Petitioner's first two habeas claims.  The Court further concludes that reasonable jurists would not debate the correctness of its procedural ruling that Petitioner procedurally defaulted his third through sixth claims.  Accordingly, a certificate of appealability shall not issue.

## VI.   CONCLUSION AND ORDER

For the reasons stated herein, the Court concludes that Petitioner has failed to demonstrate that he is being held in violation of his constitutional rights, and that he is therefore not entitled to the issuance of the writ of habeas corpus.

Accordingly,

**IT IS ORDERED** that the petition for writ of habeas corpus is **DENIED** and

-31-

this action is **DISMISSED WITH PREJUDICE**;

     **IT IS FURTHER ORDERED** that a certificate of appealability **SHALL NOT ISSUE**;

     **IT IS FURTHER ORDERED** that Petitioner's motion for an evidentiary hearing is **DENIED.**

Dated: August 28, 2015

                                       s/PATRICK J. DUGGAN
                                       UNITED STATES DISTRICT JUDGE

**Copies to:**
Leonard Carter, # 230820
Kinross Correctional Facility
16770 S. Watertower Drive
Kincheloe, MI 49788

Laura Moody, AAG
Raina I. Korbakis, AAG